IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs March 9, 2005

## STATE OF TENNESSEE v. JOHNNY EUGENE STUBBLEFIELD

**Direct Appeal from the Circuit Court for Lewis County**
**No. 6452     Timothy L. Easter, Judge**

---

**No. M2004-01537-CCA-R3-CD - Filed May 20, 2005**

---

Following a jury trial, the defendant was found guilty of two counts of sale of a Schedule III controlled substance (Lortab), a Class D felony, and sentenced as a Range I, standard offender, to concurrent four-year sentences. He appeals to this Court contending that: (1) the evidence presented was insufficient to show that the defendant acted knowingly; (2) the evidence presented was insufficient to show that the transaction constituted a sale; (3) the trial court erred in finding that the dispensing of prescription drugs creates a high risk of harm to human life; and (4) the trial court erred in denying alternative sentencing. Following our review, we affirm the defendant's convictions and sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and NORMA MCGEE OGLE, JJ., joined.

Larry Joe Hinson, Jr., Hohenwald, Tennessee (on appeal), and Stacy M. Brackeen, Franklin, Tennessee (at trial), for the appellant, Johnny Eugene Stubblefield.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Jeffrey L. Long, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Facts and Procedural History**

The charges against the defendant arose as part of the 21st Judicial District Drug Task Force's undercover narcotic operations. On two different occasions, the defendant was involved in the sale of Lortab to an informant in Lewis County. The grand jury returned separate indictments on each count.

The record reflects that Joe Ashmore ("Ashmore"), an agent with the drug task force, was contacted by Jamie Garrison ("Garrison"), who indicated that he was interested in assisting the drug task force by making undercover drug transactions. Subsequently, Garrison learned that the defendant would be receiving Lortab and informed the defendant on April 18, 2003, that he would probably be making a purchase from him.

The following day, Garrison's vehicle and person were searched, and he was equipped with a transmitting device and a hard-wire unit. He was also given $40, with previously recorded serial numbers, to be used in making the purchase. Garrison proceeded to the home of Robert Crowe ("Crowe"), where the defendant was present, to conduct the transaction. Ashmore was able to monitor the transaction from a parking lot near Crowe's residence and made a tape recording of the transaction. Shortly after arriving, Garrison asked the defendant if he had any Lortab, to which the defendant responded affirmatively. Garrison also asked the defendant if he would sell the pills for $5 each. The defendant agreed, and Garrison purchased "four 7.5 [milligram] Lortabs" from the defendant for $20.

Thereafter, Garrison met Ashmore at a predetermined location to deliver the pills and return the remaining $20 that he did not use in the transaction. Joey Kimble ("Kimble"), the director of the drug task force, later submitted the pills for identification analysis. Glenn Everett, a Tennessee Bureau of Investigation (TBI) forensic scientist, ultimately identified the pills as dihydrocodeinone, or Lortab, a Schedule III controlled substance.

On April 23, Garrison targeted another individual from which to purchase drugs; however, after failing to locate the original target, the decision was made to make another purchase from the defendant. After several attempts to locate the defendant, Garrison spoke with Brandi Sharp ("Sharp"), who was standing in front of the defendant's home. A few minutes later, the defendant came out of the house, and Garrison asked the defendant if he would sell him additional pills. In response, the defendant instructed Garrison to meet him at Crowe's house.

Garrison arrived at Crowe's home, followed by the defendant, Sharp, and Nadine Hinson ("Hinson"). Garrison and the defendant went into another room, and the defendant asked Garrison if he was "wired," to which Garrison responded, "What do you think?" Hinson then came into the room and stated that she "thought [the defendant] wasn't gonna do that," referring to selling the pills to Garrison. The defendant told Hinson that he was going to sell three Lortab and keep three. Accordingly, when Hinson left the room, the defendant sold Garrison three "Lortab 10's" for $30.[1]

As before, the defendant met Ashmore to deliver the pills and the unused money. The pills were then turned over to the TBI crime lab, where William H. Stanton identified them as Lortab.

---

[1] Garrison stated that he paid more for the pills acquired in the second transaction because they were ten-milligram pills, while the pills purchased on April 19 were only seven and a half milligrams.

## Analysis

## I. Sufficiency

On appeal, the defendant challenges the sufficiency of the evidence to prove (1) that the defendant acted knowingly, and (2) that the transaction constituted a sale. When an accused challenges the sufficiency of the evidence, this Court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). To the contrary, this Court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences that may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this Court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Grace, 493 S.W.2d at 476.

We first analyze whether the defendant acted knowingly. "Knowing" refers to:
[A] person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn. Code Ann. § 39-11-106(20). Therefore, in the present case, the defendant acted knowingly if he knew that his actions constituted the sale of a controlled substance. We conclude that ample evidence was presented to support a finding that the defendant acted knowingly.

-3-

Taken in a light most favorable to the State, the record reflects that, on April 19, Garrison traveled to Crowe's residence in an attempt to purchase Lortab from the defendant. After arriving, he asked the defendant if he had any Lortab and the defendant responded that he did. Garrison then asked the defendant if he would be willing to sell the pills for $5 each, and the defendant responded affirmatively. Accordingly, the defendant then exchanged four pills for $20.

On April 23, Garrison again located the defendant in an attempt to make a purchase of Lortab. Garrison asked the defendant if he had any pills with which to make another transaction. The defendant responded by instructing Garrison to meet him at Crowe's house. After both arrived at the residence, the defendant and Garrison went into another room, and the defendant asked Garrison if he was "wired." Hinson then indicated that she thought that the defendant was not going to sell the pills to Garrison. The defendant replied that he was going to sell three pills and keep three. Accordingly, after Hinson left, the defendant handed Garrison three "Lortab 10's" and accepted $30 from Garrison in exchange. Upon review of the evidence, we conclude that there was sufficient evidence presented for a jury to find that the defendant knew he was engaged in the sale of Lortab.

The defendant also contends that the facts of the case are insufficient to prove that the transactions constituted sales. Specifically he avers that, because Garrison initiated and orchestrated the purchases, the defendant could not be found to have sold the Lortab. In this context, we have previously adopted the Black's Law Dictionary 1200 (5th ed. 1979) definition of a sale as a contract between two parties by which the seller, in consideration of the payment or promise of payment of a certain price in money, transfers to the buyer the title and possession of the property. See State v. William (Slim) Alexander, No. 01C01-9302-CR-00063, 1994 Tenn. Crim. App. LEXIS 169 (Tenn. Crim. App., at Nashville, Mar. 24, 1994). Therefore, the term encompasses two broad requirements: (1) a bargained-for offer and acceptance; and (2) an actual or constructive transfer or delivery of the subject matter property.

As we have previously noted, the evidence establishes that, on both occasions, Garrison made an offer to buy the Lortab and the defendant accepted the offer. After Garrison suggested a price, the defendant transferred possession of the Lortab to Garrison and the defendant accepted the money in exchange. "One who accepts payment in exchange for property is involved in a sale." State v. Phil Wilkerson, No. 03C01-9708-CR-00336, 1998 Tenn. Crim. App. LEXIS 714, at *8 (Tenn. Crim. App., at Knoxville, July 9, 1998) (quoting State v. David Henning, No. 02C01-9404-CC-00079, 1994 Tenn. Crim. App. LEXIS 716, at *6 (Tenn. Crim. App., at Jackson, Oct. 26, 1994)). This conclusion is unchanged by the fact that the informant actually initiated the sale. The pertinent fact remains that there existed an offer, acceptance, and delivery in which the defendant willingly and actively participated. Therefore, the evidence was sufficient for a rational trier of fact to find that the transaction amounted to a sale. See id. (citing Tenn. R. App. P. 13(e)).

-4-

## II. Sentencing

Additionally, the defendant challenges the application of enhancement factor (11) and the denial of alternative sentencing. In the present case, the defendant was convicted of two counts of selling a Schedule III controlled substance (a Class D felony), which carry a Range I penalty of between two and four years.

Taking the issues in order, we note that the trial court began with the presumptive sentence on both counts, the minimum in the range, and found three enhancement factors applicable: (2) the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (9) the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving a release in the community; and (11) the defendant had no hesitation about committing a crime when the risk to human life was high. We first note that the State concedes that factor (11) was applied in error. As the State correctly points out, we have previously held that this factor cannot be applied based upon the nature of the substance involved, as the inherent risk of controlled substances has already been considered by the legislature in designating schedules for such substances and categorizing them accordingly. See State v. Keel, 882 S.W.2d 410 (Tenn. Crim. App. 1994). In the present case, the trial court noted that a high risk of harm to human life inevitably results when "a person dispenses what is otherwise a prescription drug . . . ." Therefore, we conclude that this factor was indeed applied in error.

However, we conclude that factors (2) and (9) justify the enhanced sentences. The record reflects that the trial court gave "great weight" to factors (2) and (9) and only found factor (11) to apply "to some extent." Regarding factor (2), we note that the defendant has nine prior convictions including: four convictions for public intoxication; two convictions for driving under the influence; and one conviction each of possession of a controlled substance, driving on a revoked license, and failure to appear. Moreover, the application of factor (9) is supported, as the defendant has previously violated his probation. Therefore, we affirm the defendant's concurrent four-year sentences based upon the application of factors (2) and (9).

Finally, the defendant contends that the trial court erred in denying alternative sentencing. This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentences are improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Under the Criminal Sentencing Reform Act of 1989, trial judges are encouraged to use alternatives to incarceration. An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6).

In determining if incarceration is appropriate, a trial court may consider the need to protect society by restraining a defendant having a long history of criminal conduct, the need to avoid depreciating the seriousness of the offense, whether confinement is particularly appropriate to effectively deter others likely to commit similar offenses, and whether less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A court may also consider the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114 as they are relevant to the section 40-35-103 considerations. Tenn. Code Ann. § 40-35-210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Additionally, a court should consider the defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5); Boston, 938 S.W.2d at 438.

There is no mathematical equation to be utilized in determining sentencing alternatives. Not only should the sentence fit the offense, but it should fit the offender as well. Tenn. Code Ann. § 40-35-103(2); State v. Batey, 35 S.W.3d 585, 588-89 (Tenn. Crim. App. 2000). Indeed, individualized punishment is the essence of alternative sentencing. State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). In summary, sentencing must be determined on a case-by-case basis, tailoring each sentence to that particular defendant based upon the facts of that case and the circumstances of that defendant. State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986).

At the sentencing hearing the trial court opined:

Pursuant to 40-35-102(6), the defendant has been convicted as a standard offender of a Class D felony, actually, two, and, therefore, by law, [the defendant], the court is required to presume that you are a favorable candidate for some type of alternative sentencing, that is alternative probation or split confinement, absent evidence to the contrary. Looking for guidance for the court of evidence to the contrary, the legislature has set out certain considerations under 40-35-103 that I'm looking at now.

And I find that in this case that a sentence involving confinement should be considered here because confinement is necessary to protect this society by restraining a defendant who has a long history of criminal conduct. Again, I don't think I need to comment on that much because the record certainly bears that out in the pre-sentence report and now Exhibit 2, as well. I find, also, that confinement is necessary to avoid depreciating the seriousness of this offense and is particularly suited to provide an effective deterrent to others likely to commit this offense in Lewis County.

Based upon the testimony of Agent Ashmore regarding the sale of illegal drugs, particularly Lortab, and particularly those that are being prescribed by these doctors here in Lewis County, somebody has got to learn that there is a price to pay for this dangerous conduct. It's got to stop. This court has seen murder cases which grew out of this type of conduct, in Lewis County. So there needs to be confinement in this case to provide an effective deterrent to others likely to commit similar offenses, based upon the testimony that we've heard from the drug task force agent.

I find, also, as it relates to [the defendant], that measures less restrictive than confinement have frequently or recently been applied unsuccessfully, as evidenced by his failure at probation in the past. And while trial judges are encouraged to use alternative sentences and come up with something to try to rehabilitate an individual, I find that before I can do that in this case I have to be satisfied that, one, the individual is interested in rehabilitation and, two, that I have some level of satisfaction that he will be successful. And I have neither of those in this case. Number one, I don't think he wants it and, number two, I have no level of confidence that he would be successful at a sentence involving some type of treatment or rehabilitation.

And, therefore, I order, then, that this is not an appropriate sentence for probation, that he is ordered to serve the four years in the Department of Correction on each sentence to run concurrently, one with the other.

Upon review of the trial court's findings, we conclude that it considered both the applicable sentencing principles and the particular facts of the case and properly found that the defendant was not an appropriate candidate for alternative sentencing. We affirm.

**Conclusion**

The defendant's convictions and sentences are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE